(November 21, 1979)

■ STATE OF NEW YORK, Appellant, v CITY OF BINGHAMTON, Respondent.—Appeal from an order of the Supreme Court at Special Term, entered July 14, 1978 in Albany County, which denied plaintiff's motion for summary judgment. In this action the State of New York seeks to recover from the City of Binghamton (City) the sum of $507,938.21 which the State contends is the unpaid balance of the City's share of the land acquisition costs made necessary by the construction of the North Shore Arterial Highway which began in 1960. Subdivision 2.6 of section 349-c of the Highway Law provides that, when a proposed State arterial highway passes through a city such as Binghamton, the city is liable for 50% of the cost of necessary land acquired prior to April 1, 1965. Subdivision 2.7 of section 349-c of the Highway Law provides that, before any land could be acquired for such purpose, the City was required to deposit an amount equal to one half of the estimated cost of

such acquisition with the Comptroller of the State, subject to the draft of the Commissioner of Transportation. During the years 1960 and 1961, the City deposited $1,750,000 with the Comptroller, said amount representing one half of the estimate of the project's land acquisition costs. At some time in 1962, when it apparently became evident that the estimate was approximately one million dollars under actual cost, the Department of Public Works (now Department of Transportation) sought an additional deposit of $500,000 from the City. Though there was no response to its several later requests, the last having been made in 1964, the State took no further action of any kind until more than 10 years later. In March of 1974 Binghamton's Director of Finance made inquiry of the Department of Audit and Control concerning the state of the City's account and was informed by letter dated March 4, 1974 that the contract was completed as of December 31, 1973, that there was a cash balance due the City in the sum of $3,098.31 and that he should contact the Department of Transportation for payment. The Department of Transportation responded with a claim that the City, instead of having a credit balance, owed over a half million dollars to the State for lands acquired. Significantly, nowhere did the State reveal the dates upon which it acquired the land so as to demonstrate the City's liability therefor. On June 14, 1976 this action was commenced. In its amended answer the defendant City denied it owed any money and asserted five affirmative defenses: that the State failed to give the notice required by subdivision 2.7 of section 349-c of the Highway Law; that the Statute of Limitations had run; that the State was guilty of laches; that payment was made as evidenced by the March 4, 1974 reply from the Department of Audit and Control; that the claim asserted was not within any contractual or other obligation of the defendant. The State moved for summary judgment which was promptly denied from the bench and properly so. There were clearly discernible questions of fact, e.g., the plaintiff's two involved departments presented conflicting views as to the status of the City account and no dates of the land acquisitions were revealed so that liability under section 349-c of the Highway Law could not be ascertained. More importantly, on this record it appears that the City is entitled to summary judgment dismissing the complaint. The plaintiff's bill of particulars lists the project completion date as February 18, 1971. Under the provisions of subdivision 2.7 of section 349-c of the Highway Law, the Commissioner of Transportation is to notify the clerk of the governing body of the City when the project is completed and the City has 60 days within which to pay the amount remaining unpaid, if any. While the required statutory notice was not given here until April 11, 1977, the cause of action accrued on April 19, 1971, 60 days after the conceded date of completion when there first existed the legal right to be paid. The Statute of Limitations begins to run when the right to make the demand for payment is complete, and the plaintiff will not be permitted to prolong the Statute of Limitations simply by refusing to make a demand (CPLR 206, subd [a]; McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C206:1, p 220). *City of New York v State of New York* (40 NY2d 659), relied upon by the appellant, affords it no relief for the reason that in the case at hand the plaintiff controlled the timing of the demand. Appellant urges that the within action is one upon a contract and therefore is governed by the six-year provision of CPLR 213 (subd 2). However, we conclude that the obligation arises, not from contract, but rather, from statute. Without the financing scheme provided by section 349-c of the Highway Law, no liability on the part of the City would exist, and liability under that section terminated after April 1,

1965. If a claim would not exist but for a statute, the claim is upon "a liability * * * created or imposed by statute", and carries a three-year Statute of Limitations (CPLR 214, subd 2; see *Shepard Co. v Taylor Pub. Co.*, 234 NY 465, 468; *Klimczak v Connrex Corp.*, 49 AD2d 1031, 1032). Since this claim was not commenced until June 14, 1976, well over three years after the date upon which the State had a legal right to demand payment, it is time barred. Accordingly, even though the defendant has not so moved, we grant summary judgment in its favor, dismissing the complaint (see CPLR 3212, subd [b]; *Peoples Sav. Bank of Yonkers, N. Y. v County Dollar Corp.*, 43 AD2d 327, 334, affd 35 NY2d 836; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3212:23, p 443). Order modified, on the law, by granting summary judgment to the defendant, dismissing the complaint, and, as so modified, affirmed, with costs. Greenblott, J. P., Sweeney, Kane, Main and Mikoll, JJ., concur.